JUDGE DAVID GUADERRAMA

FILED
2023 APR 20 PM 12: 06
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,** | § |
| Plaintiff, | § |
| v. | § |
| **AFFORDABLE INSURANCE GROUP INC**, a Florida Corporation | § |
| Defendant. | § |

EP23CV0161

## PARTIES

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, resides in the Western District of Texas, and was the individual who received the alleged phone calls in this case on his private mobile telephone, and was present in Texas for all calls, in this case in El Paso, Texas.

2. Defendant AFFORDABLE INSURANCE GROUP INC ("AIG") is a corporation organized and existing under the laws of Florida with its principal address at 1301 E Atlantic Boulevard, 2nd Floor, Pompano Beach, Florida 33060 and can be served via its registered agent Andrew T Shader at 820 NE 5th Terrace, Fort Lauderdale, Florida 33304.

3. Unnamed party JOHN DOE is an anonymous offshore telemarketer hired, authorized and directed by Defendant AIG to place telemarketing phone calls on behalf of Defendant AIG.

## JURISDICTION AND VENUE

4. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

1

5. This Court has specific personal jurisdiction over AIG because Defendant purposefully availed itself to the State of Texas and to this District, and there is sufficient relationship between Defendant AIG's purposeful contacts with Texas and the litigation.

   a. Defendant AIG targets Texas when marketing small business loans and regularly conducts business in this District, including telephone solicitation.

   b. Its agents sent calls to Plaintiff's El Paso area phone number with area code 915 to generate leads for Defendant AIG.

   c. The purposeful calls injured Plaintiff in Texas, creating a causal link among Defendant AIG, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

6. Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when Plaintiff received a substantial if not every single automated phone call from Defendant AIG that is the subject matter of this lawsuit.

7. This Court has venue over Defendant because the automated phone callsu at issue were sent by or on behalf of the above-named Defendant to Plaintiff, a Texas resident

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

8. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls

were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

15. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

21. Plaintiff personally and successfully registered his phone number ending in 4604 to the National Do-Not-Call Registry ("DNC") in December 2007.

22. Plaintiff did not consent to any of the phone calls alleged herein.

23. Each and every phone call at issue in this Complaint is a solicitation phone call marketing Medicare insurance.

24. Table A shows the text messages sent to Plaintiff by Defendant AIG.

TABLE A

| **Number:** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1 | 03/29/2023 | 12:34 PM | 915-296-7676 | Telemarketer soliciting additional Medicare benefits. Told him I don't have Medicare and not to call again. |
| 2 | 03/29/2023 | 1:32 PM | 915-296-7675 | Missed call |
| 3 | 03/29/2023 | 1:59 PM | 915-296-7676 | Telemarketer soliciting additional Medicare benefits. Transferred me to rep with AIG they gave me call back number of 855-208-1899. |

| 4 | 03/29/2023 | 3:11 PM | 915-296-7672 | Missed call |
| 5 | 03/30/2023 | 8:27 AM | 915-296-7672 | Missed call |
| 6 | 03/30/2023 | 8:40 AM | 915-899-4421 | Rep Paisley calling direct from AIG. Paisley gave me her customer service number 855-208-1899. |
| 7 | 03/30/2023 | 10:28 AM | 915-296-7272 | Missed call |
| 8 | 03/30/2023 | 1:14 PM | 915-296-7676 | Declined call |
| 9 | 03/30/2023 | 1:29 PM | 915-296-7674 | Missed call |
| 10 | 03/30/2023 | 1:30 PM | 915-296-7673 | Missed call |
| 11 | 03/31/2023 | 11:04 AM | 915-296-7675 | Telemarketer soliciting additional Medicare benefits. Told him to stop calling. |

25. Call #1. On March 29, 2023, Plaintiff received a phone call that displayed 915-276-7676 on the caller identification. Plaintiff's caller identification also displayed the name "MEDIGAP ENROLL." Plaintiff answered the phone and after a delayed pause, was solicited for additional Medicare benefits. Plaintiff advised the caller he did not have Medicare and asked the telemarketer to not call again.

26. The telemarketer in paragraph 24 had a "foreign sounding" accent and the call appeared to have originated outside of the United States. The telemarketer did not ask for Plaintiff by name and did not know Plaintiff's name, age, disability status, Medicare status, or any of the information that would have been used to qualify Plaintiff for supplemental Medicare insurance.

27. Through information and belief each of the phone calls in this case that contained a 915 area code were spoofed phone number designed to make the calls appear as if the calls were local phone calls. Plaintiff called each of these 915 area code phone numbers and the calls do not transmit as a dialable number.

6

28. Call #2. On March 29, 2023, Plaintiff received a missed phone call from phone number 915-296-7675 that displayed "MEDIGAP ENROLL" on the caller identification.

29. Call #3. On March 29, 2023, Plaintiff received a third phone call from "MEDIGAP ENROLL." This call displayed 915-296-7676 on the caller identification. Plaintiff answered the phone and again informed the telemarketer he did not have Medicare. The telemarketer persisted with the phone call. Plaintiff asked for a call back number in an effort to find out who was calling him. The telemarketer gave Plaintiff a call back number of 855-208-1899.

30. At no time during the phone call in paragraph 28 did Plaintiff tell the telemarketer he was interested in their products or services.

31. Calls #4-5 were missed calls on March 29, 2023, and March 30, 2023 respectively.

32. Call #6. On March 30, 2023, plaintiff received a phone call that displayed 915-899-4421 on the caller identification. Plaintiff answered the phone and a representative named "Paisley" began to solicit Plaintiff for Medicare supplemental insurance. The telemarketer did not identify the company on whose behalf the call had been placed. Therefore, Plaintiff asked for a callback number as part of identifying who was behind the calls. Paisley gave Plaintiff a callback number of 855-208-1899.

33. Calls #7-10 were all missed or declined phone calls with the same spoofed numbers used by the Defendant to call Plaintiff.

34. Call # 11. On March 31, 2023, Plaintiff received a phone call with "MEDIGAP ENROLL" and 915-296-7675 displayed on the caller identification. Plaintiff answered the phone and asked the telemarketer to stop calling.

35. Through information and belief Defendant employed an automated dialer that randomly dialed Plaintiff's phone number. Each of the answered calls in this case contained a long pause,

7

audible beep, and was not directed to Plaintiff as Defendant did not know Plaintiff's name.

36. Through information and belief, Defendant purchased a block of 915-296-74XX phone numbers in order to solicit consumers in the 915 area code and make it appear as is the calls were from a local company.

37. Plaintiff is 48 years old and is not disabled. Therefore, Plaintiff does not qualify for any Medicare services at all.

38. Plaintiff does not qualify for Medicare and has never had any relationship with Defendant.

39. On April 19, 2023, Plaintiff searched on the Texas Secretary of State website https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid Texas Solicitation Registration as required by Texas Business and Commerce Code 302.101 for Defendants

40. Defendant did not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

41. Defendant participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful telemarketers calls, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful solicitation calls.

42. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

43. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

44. No emergency necessitated the calls.

45. Through information and belief, Defendant did not have a written do-not-call policy while it was sending Mr. Callier unsolicited calls.

46. Through information and belief, the Defendant did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

47. Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

48. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

49. Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

50. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone

## VICARIOUS LIABILITY OF DEFENDANT FOR CALLS PLACED BY THE
## ANONYMOUS OFFSHORE TELEMARKETER

51. AIG is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as John Doe. In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2013).

52. AIG markets legal representation through direct telephone solicitation by its hired John Doe telemarketers, who act on its behalf. John Doe transfers live, hot leads to AIG and AIG accepts the leads. John Doe was AIG's agent when it made the prohibited calls on behalf of, and with the actual authority from, John Doe pursuant to a contract that governs John Doe's telemarketing for AIG.

53. AIG directs, controls, authorizes, and pays John Doe to generate live-transfer leads for Defendant's legal services through telephone solicitation. Moreover, it requires, authorizes, or at least permits John Doe telemarketers to solicit explicitly for Medical supplemental insurance.

54. AIG sets the criteria for qualifying leads, which John Doe must follow, and John Doe live-transfers leads qualified on those criteria exclusively to AIG.

55. On information and belief, AIG writes or at least approves the call script John Doe telemarketers use when qualifying leads for AIG.

56. John Doe telemarketers are AIG's associates and do nothing to disturb the impression that John Doe telemarketers work for, and speak and act on behalf of, AIG.

57. From John Doe telemarketer's initial call through the last call received by Plaintiff, AIG's Medicare supplement solicitations constitute a singular, coordinated marketing effort devised, authorized, directed, and controlled by AIG, the principal, with John Doe acting as AIG's agent.

58. John Doe, acting with actual authority, made the prohibited calls, qualified Plaintiff according to AIG's criteria, and then live-transferred Plaintiff to AIG's advisor to continue marketing legal Medicare supplemental insurance.

59. Through information and belief, John Doe is located offshore and outside the reach of he laws of the United States.

60. Plaintiff infers an ATDS was used to place the calls because:

   a. Plaintiff was never a customer of Defendant and Defendant did not have a legitimate reason to have Plaintiff's number on any list, or database, from which Plaintiff's phone number would have been called.

   b. Random of sequential generation explains how Defendant obtained and called Plaintiff's number, considering Plaintiff did not give it to Defendant, or have a relationship with Defendant, or otherwise consent to the calls.

   c. Had Defendant obtained Plaintiff's number from a pre-existing list, rather than through random or sequential generation, the list would have likely been scrubbed against the National Do Not Call Registry and Plaintiff's number would have been removed.

   d. Had Defendant obtained Plaintiff's number from a pre-existing list, rather than through random or sequential generation, the list would have likely been scrubbed against Defendant's internal Do Not Call list and Plaintiff's number would have been removed. Plaintiff asked Defendant to stop calling Plaintiff on March 29, 2023.

   e. Plaintiff is 48 years old and does not qualify for Medicare. There was not legitimate reason for Plaintiff to be called and solicited for Medicare related products. Random or sequential dialer explains why Defendant called Plaintiff.

61. Defendant AIG and/or their telemarketers had no reason to have Plaintiff's phone number ending in 4604 in their possession or in any database or spreadsheet that would have been used to call Plaintiff.

**Violations of the Texas Business and Commerce Code § 302.101**

62. The actions of Defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

63. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

64. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

65. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

66. Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation under §302.101.

67. Under Texas Business and Commerce Code § 302.302(d) Plaintiff is entitled to all reasonable costs of prosecuting the case to include attorney's fees, deposition costs, investigation costs, and witness fees.

## CAUSES OF ACTION

### COUNT ONE

**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent**

68. Plaintiff incorporates the preceding paragraphs 1-67 as if fully set forth herein.

69. Defendant AIG placed nine (9) automated calls to Plaintiff's cellular telephone.

70. Plaintiff never consented to receive automated calls from Defendant. Plaintiff has had no relationship with Defendant AIG.

71. Defendant AIG's phone calls were made for the purpose of advertising and marketing their goods and services. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

72. The automated calls were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

73. As a result of their unlawful conduct, Defendant AIG repeatedly invaded Plaintiff's privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendant AIG to stop their unlawful text message campaigns.

74. Not only did Defendant AIG make these violating automated text messages, but Defendant and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

75. If the Court finds that Defendant AIG willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## COUNT TWO

**Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C)**

76. Plaintiff incorporates the preceding paragraphs 1-67 as if fully set forth herein.

13

77. The foregoing acts and omissions of Defendant AIG and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

78. Defendant AIG sent eleven (11) phone calls to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

79. Plaintiff was statutorily damaged at least sixteen (16) times under 47 U.S.C. § 227(c)(3)(F) by Defendants' calls described above, in the amount of $500 per automated text message.

80. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

81. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F)

### COUNT THREE

### Violations of The Texas Business and Commerce Code 302.101

82. Plaintiff incorporates the preceding paragraphs 1-67 as if fully set forth herein

83. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

84. Mr. Callier is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

85. Plaintiff is entitled to an award of all reasonable costs of prosecuting the action including court costs, investigation costs, deposition expenses, witness fees and attorney's fees. **Texas Business and Commerce Code 302.302(d)**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against Defendant as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for eleven (11) calls.

E. An award of $5,000 in statutory damages arising from eleven (11) violations of the Texas Business and Commerce code 302.101.

F. An award to Mr. Callier of damages, as allowed by law under the TCPA;

G. An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity.

H. Such further relief as the Court deems necessary, just, and proper.

April 20, 2023,                    Respectfully submitted,

*[signature]*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com